IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOSEPH SOROKA,<br><br>    Plaintiff,<br><br>    v.<br><br>LEE TECHNOLOGIES SERVICES,<br>INC., f/k/a Lee Technologies Facility<br>Wide Service, Inc., Lee Technologies<br>Group, Inc., Lee Technologies, Inc.,<br><br>    Defendants. | CIVIL ACTION FILE<br>NO. 1:06-CV-0710-TWT |

OPINION AND ORDER

This is a declaratory judgment action. It is before the Court on the Defendants' Amended Motion to Dismiss or, in the Alternative, to Transfer Venue or Stay Proceedings [Doc. 10] and the Plaintiff's Motion for Expedited Ruling on Defendants' Amended Motion to Dismiss or, in the Alternative, to Transfer Venue or Stay Proceedings [Doc. 16]. For the reasons set forth below, the Defendants' Motion to Transfer Venue is GRANTED, and the Plaintiff's motion is GRANTED.

I. BACKGROUND

Plaintiff Joseph Soroka, a resident of Georgia, is a former employee of Defendants Lee Technologies, Inc. ("LTI") and Lee Technologies Services, Inc.

("LTS"), formerly Lee Technologies Facility Wide Service, Inc. LTI is in the business of designing, developing, and monitoring computer rooms and data centers as well as providing services to support computer facilities. LTS is engaged in the business of selling electrical and mechanical equipment and integration services. Defendant Lee Technologies Group, Inc. ("LTG") is the parent company of both LTI and LTS. All three corporations are organized under the laws of the Commonwealth of Virginia and have their principal place of business in Fairfax, Virginia.

In February 1999, Soroka began working for LTI as a sales manager. In 2000, Soroka was promoted to Director of Technical Operations for LTS and was responsible for developing and managing employees who provided technical services to LTS customers. In connection with this position, Soroka executed an Employment Agreement with LTS. The Employment Agreement, which specifies that it is to be governed by and construed in accordance with Virginia law, contains a number of restrictive employment covenants. Specifically, Paragraph 5.2 provides, in pertinent part:

> The Employee agrees to preserve and protect the confidentiality of Confidential Information both during and after employment with the Corporation[1]. In addition, the Employee agrees not to, at any time

---

[1] For purposes of Sections 5 and 6, which contain the relevant restrictive covenants, the term "Corporation" includes, among others, LTI, LTS, and any parent of those entities, i.e., LTG. (Verified Compl., Ex. A, ¶ 8.6.)

during the term of the Employee's employment or thereafter: (1) disclose or disseminate Confidential Information to any third party . . .; (2) remove Confidential Information from any of the Corporation premises or make copies of Confidential Information . . .; or (3) use Confidential Information for such Employee's own benefit or for the benefit of any third party.

(Verified Compl., Ex. A., ¶ 5.2.)  Additionally, the non-competition covenant of Paragraph 6.1 provides that:

[W]hile employed by the Corporation and for a period of twelve (12) months thereafter, Employee will not engage or participate, directly or indirectly, as executive, Corporation, employee, contractor, partner or active owner, in the conduct or management of any business which is competitive with any business conducted by the Corporation at the date of Employee's termination.

(Verified Compl., Ex. A, ¶ 6.1.)  Finally, the non-solicitation provision, applicable during his employment and for 24 months thereafter, provided that Soroka would not:

(i) [D]irectly or indirectly . . . interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, between the Corporation, any of its customers, suppliers, manufacturers, (ii) directly or indirectly . . . sell, offer to sell, or solicit any orders for the purchase of any products or services which compete with the Corporation's products or services to or from any person or entity which was a customer of the Corporation during the two (2) years preceding Employee's termination of employment with the Corporation . . . .

(Verified Compl., Ex. A., ¶ 6.2.).

Soroka remained in his position with LTS until early 2002, at which time he began working as Director of Technical Sales Support for LTI and/or LTG.  At that time, the Executive Vice President of LTG requested that Soroka execute an

"Employee Non-Solicitation and Confidentiality Agreement" as well as an "Employment Agreement." Soroka asserts that he did not execute either. (Verified Compl. ¶¶ 24-26.) In the fall of 2004, Soroka again changed positions and began working for LTS as the Director of Technical Service. Soroka alleges that, as with his previous position, he did not execute any employment agreements or restrictive covenants with LTS or LTG when he began as Director of Technical Service. (Verified Compl. ¶ 28.) On February 3, 2006, Soroka notified LTS that he was resigning, effective on February 17, 2006. In a letter dated February 6, 2006, LTS advised Soroka that it was processing his termination effective immediately but that he would be credited two-weeks of pay through February 17th. According to Soroka, the letter also stated that he would be paid for all accrued but unused vacation leave and would be reimbursed for business-related expenses. (Verified Compl. ¶ 31.)

Subsequent to his resignation, Soroka accepted employment with VTC, LLC d/b/a Total Site Solutions ("Total Site"). (Verified Compl. ¶¶ 32, 35.) Total Site is engaged in the business of designing, developing, and maintaining data centers and mission critical facilities and providing services to support computer facilities for businesses, governmental, and other entities. Soroka concedes that Total Site may compete with the Defendants. (Verified Compl. ¶ 33.) On March 16, 2006, after learning of Soroka's employment with Total Site, the Defendants sent Soroka a cease-

and-desist letter notifying Soroka that they believed him to be in violation of the non-competition, non-solicitation, and confidentiality provisions of the Employment Agreement.  The Defendants further advised Soroka that if he did not immediately discontinue his allegedly improper activities, the Defendants would initiate legal action to enforce the Employment Agreement.  (Verified Compl., Ex. D.)

Shortly after receiving the Defendants' cease-and-desist letter, Soroka filed this declaratory judgment action, seeking a declaration that the restrictive covenants set forth in the Employment Agreement violate Georgia public policy and are, therefore, void and unenforceable as a matter of law.  Soroka seeks an interlocutory and permanent injunction, enjoining the Defendants from enforcing the restrictive covenants or from benefitting from their enforcement.  Lastly, Soroka asserts a claim for breach of contract based on the Defendants' alleged failure to pay the two-weeks salary, unused vacation time, and incurred expenses as promised in the February 6, 2006 letter.  Less than two weeks after Soroka filed this action, the Defendants filed suit in the Circuit Court of Fairfax County, Virginia, asserting claims for, among other things, breach of the non-competition agreement and breach of the non-solicitation agreement. (Defs.' Am. Mot. to Dismiss, Ex. 1.)  Soroka subsequently removed that case to the United States District Court for the Eastern District of Virginia.  The Defendants now move to dismiss this suit, arguing that a similar action is pending in

Virginia and that Soroka improperly filed this declaratory judgment action merely in anticipation of the Defendants' suit. The Defendants move, in the alternative, to transfer venue to the Eastern District of Virginia or stay the proceedings pending resolution of the related action.

## II. DISCUSSION

The Declaratory Judgment Act grants federal courts discretion to award declaratory relief in cases otherwise within their jurisdiction. 28 U.S.C. § 2201. Declaratory relief is appropriate where the judgment will "serve a useful purpose in clarifying and settling the legal relationships in issue [or] . . . will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." Aetna Cas. & Sur. Co. v. Sunshine Corp., 74 F.3d 685, 687 (6th Cir. 1996); Continental Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992); Guerra v. Sutton, 783 F.2d 1371, 1375 (9th Cir. 1986). A district court has substantial discretion in deciding whether to entertain a declaratory judgment action, even if the action properly falls within the court's jurisdiction.

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.

Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). The Eleventh Circuit Court of Appeals has stated that "[i]n its discretion, a district court may decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." Ven-Fuel, Inc. v. Department of the Treasury, 673 F.2d 1194, 1195 (11th Cir. 1982). The Defendants argue that the Court should exercise its discretion to dismiss this declaratory judgment action because it was initiated solely in anticipation of the suit to enforce the restrictive covenants pending in the Eastern District of Virginia. In the alternative, the Defendants move to transfer venue to the Eastern District of Virginia. Because the Court finds that dismissal would not be as judicially efficient under the circumstances, it will limit its discussion to the propriety of transfer under 28 U.S.C. § 1404(a).

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Determining the propriety of transferring venue is a two-step inquiry. First, transfer under Section 1404(a) is limited to courts where the action might have been brought initially. See Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960). Next, the district court must determine whether the action should be transferred for the convenience of the parties and in the interest of justice. In making this determination,

the court is vested with broad discretion.  England v. ITT Thompson Indus., Inc., 856 F.2d 1518, 1520 (11th Cir. 1988); Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352, 1355 (N.D. Ga. 2004).  The burden is on the moving party to show that the balance of conveniences weighs in favor of the transfer.  In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989).

The threshold inquiry for a Section 1404(a) transfer is whether the transferee court is a district where the action originally might have been brought.  A civil action where jurisdiction is based upon diversity of citizenship may be brought in a judicial district: (1) where any defendant resides, if all defendants reside in the same State; (2) where a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated; or (3) where any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.  28 U.S.C. § 1391(a).  The Defendants assert that their principal place of business, and thus, where they "reside", is located Fairfax, Virginia.  See 28 U.S.C. § 1391(c) ("For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."); 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State

where it has its principal place of business . . . ."). Accordingly, the Defendants argue that this case should be transferred to the Eastern District of Virginia, which includes Fairfax, Virginia. Soroka does not appear to object to the Defendants' assertion. Therefore, for purposes of the transfer motion, the Court concludes that the Eastern District of Virginia constitutes a proper venue for this action.

The Court must next determine whether the balance of justice and convenience favors transfer. In doing so, courts consider various factors, including: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on a totality of the circumstances. Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); Martin v. South Carolina Bank, 811 F. Supp. 679, 685 (M.D. Ga. 1992). The Defendants contend that these factors weigh in favor of transferring this case to the Eastern District of Virginia. For instance, the Defendants assert that all relevant documentary evidence and witnesses are located in Fairfax, Virginia. Soroka has not disputed this assertion. Additionally, according to the Defendants, Soroka's Employment

Agreement, which contains a choice of law provision specifying application of Virginia law, was executed and substantially performed in Virginia.[2]

Although these factors alone may not be sufficient to warrant transfer under Section 1404(a), the Court finds that compelling reasons do exist. Ordinarily, a plaintiff's choice of forum is granted a great deal of deference. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); In re Ricoh, 870 F.2d at 573. However, the fact that a substantially similar action is pending currently in the transferee court counsels in favor of transfer because of the opportunity for consolidation and, thus, the conservation of judicial resources.[3] See Carl v. Republic Sec. Bank, No. 018981CIVHURLEY, 2002 WL 32167730, *4 (S.D. Fla. Jan. 22, 2002); Martin, 811 F. Supp. at 685 ("Undoubtedly, the most compelling reason for transfer is that there are related proceedings pending in the [transferee district]."); Chrysler Capital Corp. v. Woehling, 663 F. Supp. 478, 483 (D. Del. 1987).

---

[2]The Defendants maintain that Soroka agreed to litigate in Virginia based upon the choice of law provision. However, a choice of law provision is not the equivalent of a forum selection clause, and the Employment Agreement does not contain a forum selection clause specifying Virginia or any other venue.

[3]Soroka concedes that the action pending in the Eastern District of Virginia "concerns the same facts, agreement, issues, and parties as does this case." (Pl.'s Resp. to Defs.' Am. Mot. to Dismiss at 9.)

Nevertheless, courts often apply the "first filed" rule, which provides that when actions involving nearly identical parties and issues are pending simultaneously in courts with concurrent jurisdiction, the court in which the first suit was filed should typically hear the case. See Autonation, Inc. v. Whitlock, 276 F. Supp. 2d 1258, 1264 (S.D. Fla. 2003); Martin, 811 F. Supp. at 686.  But, the first filed rule is not applied mechanically and exceptions are made in compelling circumstances.  Manuel, 430 F.3d at 1135.  Compelling circumstances may be found where a declaratory judgment action is filed in anticipation of another suit and is being used for forum shopping purposes.  See id. ("[O]ne equitable consideration . . . is whether the . . . action was filed in apparent anticipation of the other pending proceeding."); Ven-Fuel, Inc., 673 F.2d at 1195 (affirming district court's dismissal of first filed anticipatory declaratory judgment action); Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th Cir. 1967)[4] (district court properly considered fact that declaratory judgment action was filed in anticipation of defendant's breach of contract action); FMC Corp. v. AMVAC Chem. Corp., 379 F. Supp. 2d 733, 744 & n.23 (E.D. Pa. 2005) (collecting cases); Z-Line Designs, Inc. v. Bell'O Int'l, LLC, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (anticipatory declaratory judgment suits filed in response to indications from

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

defendant of imminent suit are examples of forum shopping); Heatron, Inc. v. Shackelford, 898 F. Supp. 1491, 1494-95 (D. Kan. 1995) (exception to first-filed rule may apply where declaratory judgment action is triggered by receipt of notice letter). In some instances, "the mere fact that a plaintiff filed its declaratory judgment action first does not give it a 'right' to choose a forum." Patton Elec. Co. v. Rampart Air, Inc., 777 F. Supp. 704, 708 (N.D. Ind. 1991) (citing Tempco Elec. Heater Corp. v. Omega Eng'g, Inc., 819 F.2d 746, 749-50 (7th Cir. 1987)).  This is particularly true when there is evidence that the underlying motivation for the first-filed action is forum shopping.  See Schwarz v. National Van Lines, Inc., 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004) ("[C]ourts refuse to enforce the first to file rule where forum shopping motivated the first-filed action or the first-filed action constitutes an 'improper anticipatory filing' made under threat of an imminent suit and asserting the mirror-image of that suit in another district."); Barrington Group, Ltd. v. Genesys Software Sys., Inc., 239 F. Supp. 2d 870, 873 (E.D. Wis. 2003) (presumption of first-to-file rule "diminishes if the purpose of that first filing is simply to preempt the choice of venue").

      The Court finds that sufficient evidence exists to establish that Soroka was motivated by forum-shopping concerns and filed this action in anticipation of the suit subsequently filed by the Defendants.  In this regard, the sequence of events is quite

telling. On February 3, 2006, Soroka notified his employer that he was resigning. Soroka is aware that the Defendants have previously sought to enforce restrictive covenants against former employees. (Verified Compl. ¶ 36.) Despite this knowledge, Soroka took no action, legal or otherwise, to clarify the applicability of the provisions of the Employment Agreement until after notification by the Defendants of their intent to enforce the restrictive covenants. More specifically, Soroka did not file this action until March 27, 2006, just eleven days after receiving the cease-and-desist letter from the Defendants, which stated, in pertinent part:

> It has come to our attention that you recently became employed by a direct competitor of Lee Technologies. . . As a condition of your employment in this important and sensitive role, you executed written agreements with Lee Technologies Services, Inc. containing confidentiality, non-compete and non-solicitation provisions.
>
> . . .
>
> We have already had one customer inform us that you visited with them recently in an attempt to convince them to utilize another company . . . We also understand that you recently sent letters to a number of our customers informing them that you had left Lee Technologies and were now working for a competing firm. . . This is a direct violation of the confidentiality and non-solicitation provisions contained in the written agreements you entered into with Lee Technologies.
>
> . . .
>
> We demand that you immediately discontinue in your use of Lee Technologies' confidential information and refrain from further attempts to disrupt our business relationships with our customers. *Should you persist in such activities, we will initiate legal action against you to*

> *ensure the enforcement of the written agreements. These legal proceedings will include the pursuit of injunctive relief, damages and other remedies provided by the agreements and available at law.*

(Verified Compl., Ex. D) (emphasis added). As promised in their letter, on April 7, 2006, the Defendants filed suit in Virginia, seeking enforcement of and damages related to the alleged breaches of the restrictive covenants.

Given the speed with which Soroka reacted in the face of the Defendants' explicit statement of imminent legal proceedings, it is evident that he was not acting to resolve uncertainty regarding the applicability of the restrictive covenants. Rather, Soroka filed this suit in anticipation of the Defendants' suit to enforce the restrictive covenants. In fact, Soroka acknowledges in his Verified Complaint that the Defendants had clearly and directly threatened an enforcement suit. (Verified Compl. ¶ 39.) It is further evident from Soroka's conduct that he acted in an effort to secure his preferred forum before the Defendants, the allegedly wronged parties, could choose theirs. Under these circumstances, the Court finds that there exist compelling circumstances warranting an exception to the first-filed rule. See Z-Line Designs, Inc., 218 F.R.D. at 667 ("[W]here as here a declaratory judgment action has been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first."); Hanson PLC v. Metro-Goldwyn-Mayer, Inc., 932 F. Supp. 104, 107 (S.D.N.Y. 1996) (preemptive

declaratory judgment action filed three days after cease and desist letter not given benefit of first-filed rule). Rather than exercise its discretion to dismiss Soroka's declaratory judgment action, because a substantially similar case is pending in the transferee district, the Court deems a transfer of venue to be more appropriate. The anticipatory nature of this action, particularly when considered in light of the similar pending suit and the convenience of the witnesses and documentary evidence, outweighs any convenience factors favoring venue in this district. As such, Defendants' motion to transfer venue to the Eastern District of Virginia is granted.

## III.  CONCLUSION

For the reasons set forth above, the Defendants' Amended Motion to Transfer Venue [Doc. 10] is GRANTED. The Clerk is directed to transfer this case to the United States District Court for the Eastern District of Virginia. The Plaintiff's Motion to Expedite Ruling on Defendants' Amended Motion to Dismiss or, in the Alternative, to Transfer Venue or Stay Proceedings [Doc. 16] is GRANTED.

SO ORDERED, this 19 day of June, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge